JOSEPH FARWELL and another *vs.* DAVIS TILLSON.

Knox.  Opinion June 3, 1884.

*Statute of frauds.  Contracts which are not to be performed within one year.*

When the statute of frauds is relied upon in defence to an action for breach of a contract, on the ground that it was not to be performed within a year, it should be pleaded specially; then it is open to the defence, notwithstanding

formal objection may not have been taken to certain testimony introduced, tending to show an oral contract.

To defeat the application of the statute of frauds by the happening of a contingency, it must be such a contingency as renders performance of the contract possible within the year.

Where a contract is partly oral, and conflicting evidence is introduced of the conversations which were alleged to have resulted in a completed contract, the questions, whether a contract was in fact made and, if so, what were its terms, are for the jury.

Effect is to be given to an oral contract if proved, unless upon the whole case it appears affirmatively that it is not to be fully performed within a year.

The statute of frauds does not apply to contracts which simply may not be performed within the year, even if they probably will not or are not expected to be so performed, but it does apply to those which are not to be performed within that time; it includes any agreement, which by a reasonable construction of its terms, and in view of all the circumstances existing at the time, does not admit of performance according to its language and intention, within that period.

In determining the question of the time of the performance of a contract, it is proper to consider the circumstances and situation of the parties, so far as known to each other, and the subject matter of the contract.

ON EXCEPTIONS and motion to set aside the verdict, by the plaintiffs.

Assumpsit to recover a balance due from defendant as owner of a cargo, on a general average, to the plaintiffs as owners of schooner Joseph Farwell, also for amount of loss sustained by the plaintiffs by the failure and refusal of the defendant to permit the plaintiffs to carry from Hurricane Island to Baltimore, ten thousand tons of granite, according to contract stated in the opinion; loss alleged, fifteen thousand dollars.

The plea was the general issue and brief statement setting up, among other defences, the statute of frauds.

The contract between the defendant and the government, referred to in the opinion, was dated April 22, 1873, and its provisions, material to this case, were as follows :

"The parties of the second part covenant and agree to and with the party of the first part to furnish from their quarry at Hurricane Island, state of Maine, and deliver at the site of the aforesaid building [United States Custom House to be built at St. Louis,] as much gray granite as may be required by the plans to be adopted by the treasury department for said building;

provided, that should such gray granite be found unsuitable for the moulded and enriched work of the superstructure of said building, above the first story, the parties of the second part agree to furnish granite therefor from other quarries subject to the approval of parties of the first part.

"And the parties of the second part further agree to furnish and deliver said granite at such times and in such quantities as may from time to time be ordered by the party of the first part, and that the granite shall be of the best quality to be obtained from their quarry aforesaid, and of uniform color, free from flaws, stains or discoloring matter and to the entire satisfaction of the party of the first part;   .   .   .

" And the parties of the second part further agree to furnish such number of men as may from time to time be deemed necessary by the party of the first part for the proper prosecution of the work, and provide such shops, sheds and other buildings as may be necessary for the performance of the work and for the accommodation of the workmen without cost to the government or compensation for their use, or for rent of the land on which they may be erected.   And the said parties of the second part further agree to cut as well as furnish and deliver all granite herein contracted for, at such times as may be required by the said party of the first part, and in default thereof to forfeit and pay to the United States the sum of one hundred dollars ($100) per diem for each and every day thereafter, until the final completion of the same, which sum shall be deducted from any moneys which may be due them, and if that amount be not due them, then their bondsmen are to be held liable for any deficiency, to be recovered of them by suit, in the name of the United States. And the said parties of the second part further covenant and agree to and with the party of the first part, to lease and hereby do let and lease their quarry or quarries at Hurricane Island, Maine, with all and singular the tools, buildings, wharves and appurtenances thereunto pertaining unto the said party of the first part, with full·right, authority and power to enter upon, occupy and use the same, or procure therefrom any or all such stones as parties of the second part shall fail, omit or decline to

furnish, and said lease shall continue in full, until the final completion of the delivery of the granite herein contracted for; it being understood and agreed that the object of this lease is to secure the party of the first part a sufficient and suitable supply of granite for said building from the quarry or quarries aforesaid, and that such entry or occupancy of the said premises shall not be made by the party of the first .part, unless the parties of the second part shall be in default, and unless the party of the first part shall give to the parties of the second part eight (8) days' notice of their intention so to do . . . and in case of said default or failure to comply with the conditions of this contract at the end of, said eight (8) days the party of the first part shall enter into full and complete possession." . . .

The verdict was for plaintiffs in the sum of three hundred sixty-one dollars and thirteen cents, and the jury found specially that there was no binding contract between the plaintiffs and the defendant for carrying the granite for the St. Louis building from Hurricane Island to Baltimore.

Other material facts stated in the opinion.

*A. P. Gould,* for the plaintiffs.

I. The terms of the contract, so far as they are put in issue by the pleadings, are undisputed, and its construction was, therefore, for the court. *Atwood* v. *Clark,* 2 Maine, 249; *Homans* v. *Lambard,* 21 Maine, 308; 2 Parsons, Contr. 4, 68; *Todd* v. *Whitney,* 27 Maine, 480; *Short* v. *Woodward,* 13 Gray, 86.

There is no difference in this respect between a written and an oral contract, when the terms of the oral contract are clearly proved and undisputed. *Homans* v. *Lambard, supra; Short* v. *Woodward,* 13 Gray, 86.

The declaration complains only of a breach of that part of the contract which is wholly written in the proposal, to wit: The refusal to permit the plaintiffs to freight the stone to Baltimore. There is no complaint of a breach of the clause, " and all other conditions as to water and detention, are as you have talked to us." This related to terminal facilities and unreasonable detention of vessels and nothing else. No other talk was referred to in

the proposal, and it was error to admit testimony of other conversations and to treat them as a part of the contract.

The terms being in writing and undisputed, so far as they related to the issue, the meaning and construction of the contract were for the court.

It was error to instruct the jury that it was for them to consider the testimony of defendant as to conversation with the plaintiffs relating to the length of time for the performance of his contract with the government, or the contract of the Baltimore and Ohio railroad, and that testimony was erroneously admitted. It was adding terms to the plaintiffs' contract, without their consent. If the court had put a construction on so much of the offer and contract, as was in issue by the pleadings, no such addition to the contract would have been made.

II. It does not appear by the terms of this contract that it could not have been performed within one year; and it is not, therefore, within the statute of frauds. R. S., c. 111, § 1, p. 5; *Linscott* v. *McIntire*, 15 Maine, 201; *Duffy* v. *Patten*, 74 Maine, 396; *Herrin* v. *Butters*, 20 Maine, 119; *Fenton* v. *Embler*, 3 Burr. 1278; *Boydell* v. *Drummond*, 11 East, 142; *Walker* v. *Johnson*, 96 U. S. 424; *Russell* v. *Slade*, 12 Conn. 455; *Clark* v. *Pendleton*, 20 Conn. 495; *McLees* v. *Hale*, 10 Wend. 426; *Moore* v. *Fox*, 10 Johns. 244; *Dresser* v. *Dresser*, 35 Barb. 573; *Gault* v. *Brown*, 48 N. H. 190; *Peters* v. *Westborough*, 19 Pick. 364; *Anon.* 1 Salk. 280; *Peter* v. *Compton*, Skinner, 355; 2 Kent's Com. (12 ed.) 510, note c.; Abbott's Trial, Ev. 363.

In *Hearne* v. *Chadbourne*, 65 Maine, 302, there was a departure from the principle that it must appear by the terms of the contract that it was not to be performed within a year, but to the extent only, of permitting it to be shown by the acts of the parties when the time for the performance of the contract was to commence, the contract being silent on this point. If *Hearne* v. *Chadbourne* is good law, and is to be considered as deciding that evidence other than the terms of the contract, is to be received, to enable the defendant to set up the statute of frauds, then *Linscott* v. *McIntire*, *supra*, and *Herrin* v. *Butters*, *supra*,

are not good law.  Those cases have not been overruled but are cited in *Duffy* v. *Patten, supra,* as still law.

Reference in the plaintiffs' written proposal to the defendant's "St. Louis contract," was simply for the purpose of showing for what building they proposed to carry the stone, and it did not make that whole contract a part of their proposition.

III. But there was nothing upon the face of the St. Louis contract to show that it was not to be performed within a year; on the contrary it appears by its stipulations that the government might have required Tillson to furnish all the stone therein contracted for within a year.

If the plaintiffs were bound to look into the defendant's contract with the government, they could not have discovered by it, that the stone were not all to be carried in one year.  No quantity of stone is mentioned in that contract.  The size of the building is not given from which an estimate of quantity might be made.  The stipulation was "as much gray granite as may be required by the plans *to be adopted* by the treasury department for said building."

It was not certain that all the granite should come from Hurricane Island.  In reading the contract the plaintiffs would have perceived that the major part of the stone might be required from other places.  In that contingency it would be absurd to say that Tillson could not, with a sufficient force, obtain and ship, at least to Baltimore, all the granite in one year.  He was not restricted by the terms of his contract.

If, upon a contingency which might happen to shorten the time of performance, it does not appear that the contract could not have been performed within a year, it is not within the statute. Browne, Stat. of Fraud, § § 275, 278 *a,* 279, 280; *Gault* v. *Brown, supra; Blanding* v. *Sargent,* 33 N. H. 239; *Artcher* v. *Zeh,* 5 Hill, 200; *Lyon* v. *King,* 11 Met. 411; *Lapham* v. *Whipple,* 8 Met. 59; *Dresser* v. *Dresser, supra; Peters* v. *Westborough, supra; Kent* v. *Kent,* 18 Pick. 569; *Roberts* v. *Rockbottom Co.* 7 Met. 46; *Russell* v. *Slade, supra; Walker* v. *Johnson, supra; Smith* v. *Westall,* 1 Ld. Raym. 316.

There was another contingency in the defendant's contract with

the government by which it might have been terminated within a year. Upon any breach of his contract the government might upon eight days notice enter into the possession of the quarries and complete the quarrying, dressing and delivery of the stones. This was clearly a contingency which might happen within a year.

By their offer the plaintiffs were bound, not to carry all the granite necessary to complete the St. Louis building, but only so much of it as Tillson should deliver under his contract. They could not have insisted upon the right of carrying all the stone required for the building and recover damages of the defendant for the failure to give them the privilege of doing it. If Tillson's right of delivery was terminated by the act of the government then the plaintiffs' contract would thereby be discharged. See *Lyon* v. *King* and *Peters* v. *Westborough*, *supra.*

There is no analogy in the case of *Tatterson* v. *Suffolk M'f'g Co.* 106 Mass. 56.

IV. The testimony of the defendant that he told Farwell "that the supervising architect had informed him that it would take at least three years to complete the building" and that those bidding "were to have three years to do the work," was inadmissible for another reason than that given. Tillson's contract with the government was in writing and there was no such thing in it. The plaintiffs' proposal referred to the contract, not to conversation with the architect.

What the architect told the defendant previous to signing the contract could have no effect upon it. The parties were bound by what was written. There is no pretense that this statement was a modification of the contract after it was written. The instructions of the court upon this subject seem to us clearly wrong.

V. The defendant's want of readiness to perform his contract with the government was not admissible to show the time required by him for its performance against either the plaintiffs or the government. All the testimony on that subject was wrongfully admitted and the rulings relating to it were erroneous.

If the plaintiffs were bound to look into the government contract to ascertain their duty, it was only to the terms of the writing which they referred to in their offer. They were not required to consider whether Tillson was able to perform that contract. The agreement was plain to perform within eight days after demand.

VI. The defendant waived the statute at the trial. The statute requires, simply written evidence of the contract when demanded. In this case the contract was proved by the plaintiffs by oral evidence without objection. Brown, Stat. of Frauds, § 135; *Bird* v. *Munroe*, 66 Maine 346; *Howard* v. *Sexton*, 4 N. Y. 157; *Lawrence* v. *Chase*, 54 Maine, 201; *Williams* v. *Robinson*, 73 Maine, 186; *Holbrook* v. *Armstrong*, 10 Maine, 31; *Montgomery* v. *Edwards*, 46 Vt. 151.

*C. E. Littlefield*, for the defendant, cited: *Homans* v. *Lombard*, 21 Maine, 313; *Brown* v. *Orland*, 36 Maine, 376; 2 Parsons, Contr. (6 ed.) 482, *n.* 6, 498; *Vicary* v. *Moore*, 27 Am. Dec. 323; *Rawson* v. *Knight*, 73 Maine, 341; *Bank* v. *Dana*, 79 N. Y. 108; *Hanly* v. *Caldwell*, 35 Ark. 156; *Bradford* v. *Railroad Co.* 7 Rich. (S. C.) 201; *School Dist.* v. *Lynch*, 33 Conn. 330; *Gardner* v. *Clark*, 17 Barb. 538; *Cobb* v. *Wallace*, 5 Coldw. (Tenn.) 539; *Edwards* v. *Goldsmith*, 16 Pa. St. 43; *Sawyer* v. *Hammatt*, 15 Maine, 40; Greenl. Ev. § 201; Wharton Ev. § § 1103, 1108, 618; *Storer* v. *Gowen*, 18 Maine, 176; *Whitwell* v. *Wyer*, 11 Mass. 10; *Dorlen* v. *Douglass*, 6 Barb. 451; *Ins. Co.* v. *Newton*, 22 Wall. 32; *Stover* v. *Metzgar*, 1 Watts and S. 269; *Stacey* v. *Randall*, 17 Ill. 467; *Hill* v. *Huntress*, 43 N. H. 480; *Stephens* v. *Baird*, 9 Cow. 274; *Makepeace* v. *Harvard Coll.* 10 Pick. 302; 5 Pick. 395; 15 Texas, 303; 11 Vt. 221; 5 Ill. 561; 15 Vt. 672; 10 Wis. 443; *Stone* v. *Sanborn*, 104 Mass. 319; *Wilson* v. *Randall*, 67 N. Y. 338; *Hunt* v. *Utica*, 18 N. Y. 443; *Com'rs* v. *Rhoades*, 26 Ohio St. 411; *Bacon* v. *Cobb*, 45 Ill. 47; *Littlefield* v. *Winslow*, 19 Maine, 394; 3 U. S. Digest, (1st. series) 447, 871; *Robinson* v. *Fiske*, 25 Maine, 401; 22 Barb. 314; 46 N. H. 249; *Merrill* v. *Gore*, 29 Maine, 346;

8 Mass. 214; 11 Pick. 151; 19 Ala. 146; 9 Ind. 135; *Mont-gomery* v. *Ins. Co.* 16 B. Mon. 427; 1 Metc. (Ky.) 71; 4 Metc. (Ky.) 267; *Lockwood* v. *Barnes,* 3 Hill, 131; *Blair Town Lot, &c.* v. *Walker,* 39 Iowa, 411; *Moore* v. *Fox,* 10 Johns. 244; *Foster* v. *McO'Blenis,* 18 Mo. 91; *Rogers* v. *Brightman,* 10 Wis. 66; *Burney* v. *Ball,* 24 Ga. 516; Browne, Stat. Frauds, § § 279–282; *Hill* v. *Hooper,* 1 Gray, 131; *Doyle* v. *Dixon,* 97 Mass. 208; *Somerby* v. *Buntin,* 118 Mass. 279; *Hearne* v. *Chadbourne,* 65 Maine, 306; *Harriman* v. *Sanger,* 67 Maine, 442; *Mathews* v. *Fishe,* 64 Maine, 101.

SYMONDS, J. On July 22, 1873, the following proposition in writing was made by the plaintiffs to the defendant: "We offer and will bind ourselves to freight the stone to Baltimore for your St. Louis contract for $2.20 per ton for cut stone, provided you load and discharge same with assistance of crew, and all other conditions as to water and detention are as you have talked to us." This bid was accepted orally by the defendant.

The St. Louis contract, to which the writing refers, was one by which the defendant had agreed to furnish and deliver to the government, on terms defined therein, the granite required for the construction of a custom house then proposed to be erected in St. Louis. One ground of defense at the trial of the present action was that this contract between the government and the defendant was "not to be performed within one year from the making thereof;" that as the agreement between the plaintiffs and the defendant, which was completed by the acceptance of the written proposition already stated, related to the performance of a part of the government contract, the carriage of the stone which the defendant was bound to deliver to the government at the site of the proposed building in St. Louis, and to its performance in a respect in which that contract was not to be performed within one year from the date of the agreement between the plaintiffs and the defendant, it must be true of this latter agreement that it was not to be performed within a year from its date, since it was based upon the St. Louis contract, adopted it as one of its terms and impliedly followed it in point of time

for performance; and therefore that, if proved, the agreement between the plaintiffs and the defendant, which the declaration charges the defendant with breaking, was within the statute of frauds and did not sustain the action, neither the contract nor any memorandum or note of it being in writing signed by the defendant.

Exception is first taken to the ruling that, "where, as in this case, that ground of defense (the statute of frauds) is claimed in the pleadings and is insisted upon at the trial . . . . . it is open to the defendant, notwithstanding formal objection may not have been taken to certain testimony introduced tending to show an oral contract." The claim is that, although the statute of frauds was pleaded in bar of the action, the failure to interpose an objection to certain testimony introduced by the plaintiffs, tending to prove an oral contract, was a waiver of that ground of defense.

This claim of the plaintiffs is not in accordance with the practice of the courts. In Browne, Stat. Frauds, § 508, it is said: "With regard to contracts, the statute being regarded as not affecting their validity, it is held that unless the privilege, of requiring statutory evidence, given by it to the party resisting the enforcement of the contract is sufficiently claimed by him in some proper pleading, the court will proceed with the contract under common law rules;" and in § 515, as to proceedings in equity, "By the unbroken course of more modern decisions it is now settled that, although the defendant admit the agreement, it cannot be enforced without the production of a written memorandum, if he insist upon the bar of the statute. As was said by Sir William Grant, 'It is immaterial what admissions are made by a defendant insisting upon the benefit of the statute; for he throws it upon the plaintiff to show a complete written agreement, and it can no more be thrown upon the defendant to supply defects in the agreement than to supply the want of an agreement.' The American courts have also fully accepted this doctrine."

In this state and in Massachusetts, at least, the proper method of insisting upon the statute of frauds as a ground of defense in

a case like the present is to plead it specially, (*Lawrence* v. *Chase*, 54 Maine, 196; *Bird* v. *Munroe*, 66 Maine, 346; *Boston Duck Co.* v. *Dewey*, 6 Gray, 446; 1 Chit. Plead. 16th Am. Ed. * 507) and, when this has been done, a failure to object to certain evidence tending to show an oral contract, that is to say, to certain evidence which does not prove the issue, is not a waiver of the issue itself; especially when the whole course of the trial shows that, in point of fact, the precise issue of the pleadings was the one to which the controversy before the jury related and upon which the rulings of the court were given.

Moreover, the contract declared on was indisputably an oral one. The written proposition referred to previous conversations between the parties for some of the conditions on which it was made. The acceptance was oral. The principal question was whether the agreement was within the statute of frauds for the reason that it was not to be performed within one year, or whether the time of performance was such as to leave it valid without writing. Neither the court nor the jury, as the case might be, could pass upon that question till the whole agreement was stated in evidence. It by no means appears that formal objection to "certain testimony introduced tending to show an oral contract," could have been sustained, if it had been made.

By the terms of the contract between the government and the defendant, in the event of default or failure of performance by the defendant and after eight days notice in writing, the government might enter into possession of the quarries and work them to complete the contract at the expense of the defendant; the contract containing a lease of the quarries to the United States for that purpose. It is contended that under this provision a contingency might arise within a year and terminate the contract between the plaintiffs and the defendant; so that for this reason it was not within the statute of frauds.

The substance of this claim seems to us to be, that the defendant, having agreed with the plaintiffs for them to carry to Baltimore the stone for the St. Louis contract, might legally terminate his agreement with them by throwing upon the

government through his own default the burden of performing what his contract required him to do; in other words, that having given the plaintiffs by his agreement with them the right to perform for him a part of the government contract, the defendant might lawfully neglect or refuse to fulfil it on his part, and thereby render his agreement with the plaintiffs impossible of performance. We think, on the contrary, it was an implied term in the contract between these parties that, in the absence of facts which would legally excuse or justify a failure on the part of the defendant to do so, he should keep his government contract, so far as was necessary to enable the plaintiffs to perform the agreement he had made with them; and that the possibility of default in this respect was not a contingency, which excluded the application of the statute of frauds on the ground that it might happen within the year and, if it happened, the contract was performed, but simply a possibility that the defendant, having made two agreements, one with the plaintiffs and one with the government, might fail to keep either of them. The two contracts are so closely connected that in a certain sense one seems to be but an incident of the other. The construction of the earlier contract materially affects the construction of the later. As was said to the jury, "If the government by fair construction of its contract might have required performance within a year, it would follow that the defendant might have required of the plaintiffs the performance of their contract, the carriage of the stone, so cut, within a year." The same would be true if the defendant had the right to perform and could have performed within that time, though the government could not have required it. In *Hill* v. *Hooper*, 1 Gray, 133, it is said, "It is the settled construction of this clause of the statute, that unless the agreement can be completely performed within a year, no action can be maintained on it." The same rule is given in *Doyle* v. *Dixon*, 97 Mass. 212, and repeated in *Bernier* v. *Cabot Manufacturing Co.* 71 Maine, 508. "If the agreement cannot be completely performed within a year, the fact that it may be terminated, or further performance excused or rendered impossible, by the death of the promisee

or of another person within a year, is not sufficient to take it out of the statute. . . . .

"If the death of the promisor within the year would merely prevent full performance of the agreement, it is within the statute; but if his death would leave the agreement completely performed and its purpose fully carried out, it is not." We think this language is as true of a contingency such as is here alleged as of one arising from the uncertainty of life. To defeat the application of the statute of frauds, the contingency must be one which renders performance of the contract possible within the year; otherwise, the words of the statute apply, the agreement is one "not to be performed within one year from the making thereof."

The contract declared upon being partly oral, and conflicting evidence having been introduced in regard to the conversations which were alleged to have resulted in a completed contract, the questions whether a contract was in fact made and, if so, what were its terms, were for the jury; and its .legal effect might properly be submitted to the jury as a mixed question of law and fact, they finding the facts and the court directing as to the legal results which followed. *Homans* v. *Lambard*, 21 Maine, 308; *Smith* v. *Faulkner*, 12 Gray, 256.

The principal exceptions relate to .the rulings given to guide the jury in determining whether the oral contract, if proved, was one not to be performed within a year, in the sense intended by the statute of frauds, and, therefore, without effect to sustain the action which had been brought upon it. The substance of the rulings seems to be that this is simply a question of the legal construction of the contract, that in this respect such aids as the law allows in other instances of disputed construction are to be sought in the situation of the parties and the subject matter of the contract, in determining what the parties intended by the language used; and that if the contract, legally construed, is one not to be performed within the year, the statute applies. The jury were told that this clause of the statute does not apply to contracts which simply may not be performed within the year, even if they probably will not or are not expected to be so

performed, but only to those which are not to be performed within that time ; that it includes any agreement which by a reasonable construction of its terms, and in view of all the circumstances existing at the time, does not admit of performance according to its language and intention within that period ; and that effect was to be given to the oral contract, if proved, unless upon the whole case it appeared, affirmatively, that more than the year was required for its performance. "We want to put ourselves in the position of these contracting parties at the time they made the contract, for the purpose of finding out what they intended by it — not for the purpose of making any new contract for them — so that we may see things in the light in which they were before the parties at that time, and be able to apply the contract to the subject matter, and so get more closely to the intent of the parties as declared by the language of the contract itself. For this purpose I have received evidence tending to show what this contract was, what it related to, what the subject matter was, what amount of labor was to be done, what time was required in doing it, what vessels there were for doing it — so far as these things were known to the plaintiffs and no further — what other quarries there were in the vicinity which were available to the defendant and acceptable to the government, so far as these facts were known to the parties at the date of this bid, what means or opportunities there were for increasing the facilities for doing the work, all the circumstances and situations of the parties, and then it is for the jury to say what this contract means. . . . . Was it within the understanding and intention of the two contracting parties, as declared by the contract, that it might be performed within a year? . . . . . The subject matter of a contract might be a thing which could not possibly be done within a year. A consideration of the subject matter would show just as clearly that it was not to be performed within a year, as if there was an express agreement in the terms of the contract, that it was not to be performed within a year. So, also, a consideration of the circumstances and subject matter might show that performance of it, within a year, would require such extraordinary methods, such extraordinary appliances or resources

as could not by fair construction be regarded as within the intention of the parties, at the time when the contract was made ; and the question is, considering the subject matter, and the situation of the parties as known to each other, and reading the contract in the light which these give, whether by fair construction, it was within the understanding and intention of the parties as expressed in the contract, that it might be performed within a year, or not."

In support of the exception to these rulings, many authorities are cited by the learned counsel for the plaintiffs to the effect that it must appear by the terms of a contract, affirmatively, that it cannot be performed within a year, or the statute of frauds does not apply. We do not object to this statement as a general rule of law, and it is in very few of the cases cited, that we find anything which seems to us essentially inconsistent with the rule given to the jury at this trial. The meaning of the terms of a contract, it need not be said, is to be ascertained by interpreting them in the light of the subject matter to which they relate. They may mean one thing when used in reference to one subject, or by parties in one situation, and another thing when used under other circumstances in regard to another subject, and the true construction in each instance will be that which applies the contract to the *res*, about which the parties were dealing, and reproduces the intent which they themselves have expressed in it. A description of the nature and extent of the work stipulated to be done, in the absence of express provision on the subject, may be an indispensable element in determining whether the work was by the contract to be done in a year, or whether the contract was one not to be performed in that time. It may show performance impossible in that period, or so impracticable as to be plainly beyond the scope and intent of the agreement as expressed in the language used. The duty of the defendant to deliver the granite " at such times and in such quantities as might from time to time be ordered," as was said in the ruling, did not require of him immediate performance, upon demand, of the whole contract. Time must be allowed to execute the work, and the limitations upon the right of demand, which necessarily result from that fact, must apply.

The granite was to come from the quarry on Hurricane Island. The capacity of that quarry is involved. Should the granite at that quarry be found unsuitable for the moulded and enriched work of the superstructure of the building, the defendant was bound to furnish granite therefor from other approved quarries; and the plaintiffs at the trial were allowed to offer evidence that there were other quarries in the vicinity available for the purpose of supplying the granite under the contract, as one of the facts of the situation, to be considered by the jury in. determining what period of time was required for performance, and whether the defendant had sustained the burden of proving that the contract was one not to be performed within the year. If the government had not the right to exact performance within the year from the acceptance of the offer of July 22, 1873, and the defendant could not have performed in that time, then it followed that the plaintiffs' contract was one the performance of which must extend beyond a year from its date. "The collection of such intention" — that expressed in a contract — "by inferences from stated terms, or from actual circumstances, or both, is the office of interpretation. The adjustment of such intention to paramount law is the office of construction." Story on Cont. § 631. "The oral evidence does not usurp the authority of the written instrument; it is the instrument which operates; the oral evidence does no more than assist its operation . . . . by pointing out and connecting its terms with the proper subject matter." 3 Stark, Ev. 756; 1 Chit. Cont. 11th Am. Ed. 148.

Notwithstanding *dicta* and some decisions, especially among the earlier cases, which tend to sustain the position assumed for the plaintiffs, we regard the rule of law as established in this state by the opinions in *Herrin* v. *Butters*, 20 Maine, 119, and *Hearne* v. *Chadbourne*, 65 Maine, 302, in conformity with the rulings which were made at the trial. In the latter case, it is said: "It is true that in the absence of any words or acts of the parties, indicating the contrary, an agreement to work for a year means, to work for that time commencing forthwith. The referee reports no express stipulation in the contract to overcome this presumption; but he sets out the acts of the parties showing the

contemporary interpretation which both put upon it, and this places the case directly within the doctrine laid down in *Herrin* v. *Butters*, 20 Maine, 119 ; *Peters* v. *Westborough*, 19 Pick. 364 ; and *Boydell* v. *Drummond*, 11 East, 142, where the old idea that it must be expressly and specifically agreed that the contract is not to be performed within the year, as expressed in *Moore* v. *Fox*, 10 Johns. 244 ; and *Fenton* v. *Embler*, 3 Burr, 1278, is so far modified as to include cases where such appears to have been the understanding of the parties."

At the same time that we regard the rule of law as settled in this state, upon principle we see no reason why any other than the general rules of construction should apply in determining when a contract is to be performed, with reference to the applicability of the statute of frauds.

In Browne, Stat. Frauds, 4th Ed. § 279, it is said : "The statute, finding the parties perfectly free to make a certain contract without a writing, provides, simply, that if that contract does by its terms expressed, or from the situation of the parties reasonably implied, require more than a year for its performance, they must put it in writing. In other words, it must affirmatively appear from the contract itself, and all the circumstances that enter into the interpretation of it, that it cannot in law be performed within the space of a year from the making ;" and in § 281, "Where the manifest intent and understanding of the parties, as gathered from the words used and the circumstances existing at the time, are that the contract shall not be executed within the year, the mere fact that it is possible that the thing to be done may be done within the year, will not prevent the statute from applying. . . . Such an accomplishment must be an execution of the contract according to the understanding of the parties."

The cases upon this question are too numerous to justify a separate discussion of them, in view of the fact that we regard it as substantially settled in this state. A thorough examination of them leads to the conclusion that the rule stated by Browne and adjudged to be the law in *Hearne* v. *Chadbourne*, *supra*, is right upon authority, as we think it is, also, in principle ; and

that there was no error in this respect in the rulings at the trial.

What was said in the conversations which made the oral part of this contract, was for the jury to decide. We do not think the court could say in the first instance as matter of law, that a talk about detention could not include anything which might affect the period for performance of the contract. That was for the jury, and the ruling was correct that "if in the conversation between the parties, as to water and detention, anything was said which formed a part of the contract in regard to the time for the performance of the contract, that is to be considered by the jury in determining the question whether it is within the statute of frauds or not."

Mr. Farwell, one of the plaintiffs, in direct examination, had stated without objection the conversations which preceded the making of the bid, and, besides the circumstances showing his knowledge of all the facts at the time when he made the written proposition for his firm, he says that "the defendant had told me when I inquired of him, and was talking about the bid, about facilities, etc. I inquired about how much stone he thought there would be; he said his impression was about thirty-two thousand tons."

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.