CHARLES J. SWANSON v. JOHN E. ANDRUS.[1]

June 21, 1901.

Nos. 12,571—(140).

**Acceptance of Offer—Breach—Measure of Damages.**

The plaintiff offered to construct a certain definite part of a building for the defendant as per plan for a stated price, and added, "Will build any additional partitions for ten cts. per sq. ft., and any additional floors for eighteen cts. per sq. ft." The defendant accepted the proposal, as the jury found, and then repudiated the contract, and refused to permit the plaintiff to perform on his part. After this breach the defendant changed his plans, necessitating additional floors and partitions in the building, and let the contract for its erection to other parties. The plaintiff brought this action to recover the money expended in preparing to execute his contract, for loss of profits which he could have made on the work specifically stated in his offer, and for the loss of profits which he could have made on the work of constructing the additional floors and partitions placed in the building as it was finally constructed. *Held*:

1. He was not entitled to recover anything on the last claim stated, as it was optional with the defendant whether he would have any additional floors or partitions constructed.

2. He was entitled to recover on his other claims.

3. He was not entitled to interest on his profits until they were determined by the verdict.

Action in the district court for Hennepin county to recover $18,198 and interest, for breach of contract. The case was tried before McGee, J., and a jury, which rendered a verdict in favor of plaintiff. From an order granting a motion for a new trial unless plaintiff should consent to a reduction of the verdict, plaintiff appealed. Affirmed.

*John Lind* and *A. Ueland*, for appellant.

*Hahn, Belden & Hawley* and *W. E. Hale*, for respondent.

START, C. J.

This is an action to recover money expended in preparing to perform an alleged building contract between the parties hereto;

[1] Reported in 86 N. W. 465.

also the profits the plaintiff might have made if the defendant had permitted him to perform the contract.

The defendant was the owner of a building in the city of Minneapolis, herein referred to as the "Andrus Building," and in October, 1898, he decided to rebuild it, making it eight stories high. The matter of adding a ninth story had been considered, but he had not then concluded to do so. His plans called for the making of the six floors of the building above the second floor and the partitions in five of the stories above the second story, with the roof, fireproof. Proposals for doing such work according to the plans were invited, and one was received from the plaintiff, which was the only one considered; whereupon negotiations followed between the plaintiff and the defendant's architect relating to a change in the plan of the iron construction and the size of the floor arches so as to adapt them to the plaintiff's tile. The plaintiff offered to pay the expenses of the change if it was made. Thereupon the architect suggested that the plaintiff so modify his proposal, and he did so, under date of October 14, 1898. The proposal, as modified, was this:

"We hereby respectfully submit the following specification and supplement to our former bid of fireproofing the Andrus building with flat floor arches, in place of segment arches, as requested, to wit: Will construct six (6) floors and roof above second story with our eight-inch flat-arch tile, weighing 25½ lbs. per sq. ft., as per sample submitted and approved. * * * Will build all partitions in five stories as per plan, using four-inch tile in the corridor partitions, other partitions three-inch tile, for the sum of $19,500. Will cover all columns in basement, also first and second story, with tile for fifteen cts. per lineal foot of covering. Will build any additional partitions for ten cts. per sq. ft., and any additional floors for eighteen cts. per sq. ft. We will also deduct from the above price the additional cost of placing one additional beam between each row of columns throughout all the floors of the building, so as to make four spans instead of three between each row of columns. * * *"

The plaintiff thereafter, acting upon his understanding that this proposition had been accepted by the defendant, made preparations, including the manufacture of tile, to execute the work, but on May 18, 1899, he was ordered out of the building by defendant,

who repudiated and refused to permit plaintiff to perform it on his part. The defendant thereafter, and about August, 1899, let the work of erecting the building to other parties. The building, as finally erected, consisted of ten stories, all of which were fireproof, the defendant having finally decided to add two stories to the building, and to fire-proof them and the first and second stories. This action was brought to recover for the money expended in preparation for performance of the contract and profits on the work specifically mentioned in the plaintiff's proposal, also for profits which he might have made if he had built the floors and partitions of the first, second, ninth, and tenth stories, which were fireproofed. The answer was, in legal effect, a general denial.

On the trial special questions were submitted to and answered by the jury, covering all of the issues in the case, whereby they found that the defendant accepted the final proposal of the plaintiff; that he expended $1,604.80 in preparing to execute the contract; that he could have made a profit of $6,232.28 on the work specifically described in his proposal; and by the fifth special finding they found that he could have made a profit of $6,779.36 in building the additional floors and partitions in the building as actually constructed. They also returned a general verdict for the plaintiff for the sum of $15,982.79, being the aggregate of the several sums so specially found, plus interest from May 18, 1898. Upon the defendant's motion for a new trial, the trial court ordered that it be granted, unless the plaintiff consented that the verdict be reduced to $8,030.68. This, in effect, required the plaintiff to waive all claim to the $6,779.36 item included in the verdict for the profits he could have made on the fireproofing of the additional floors and partitions, and to all interest except upon the $1,604.80 item included in the verdict for money expended in getting ready to execute the contract. Two questions are presented by the assignments of error.

1. Is the plaintiff entitled to recover for the profits the jury found by their fifth finding that he could have made on the work of fireproofing the additional floors and partitions which were placed in the building as finally constructed? We answer the

question in the negative. The plaintiff insists that his proposal and its acceptance by the defendant must be construed as a valid obligation on the part of the defendant not only to let him do the fireproofing specified in his proposal, and pay him therefor the price therein named, but also to let him do all additional fireproofing at the price per square foot therein also stated, which might thereafter be required for the building. That is, as we understand the claim, in case the defendant changed the plans of the building so as to provide for additional stories, no matter how many, and decided to have them, with the first and second stories, fireproofed, he could not let the work to any other party, because the plaintiff had an existing contract right to do the work. But the defendant never agreed to change the plans, or, if he did, to have any part of the building fireproofed, except as specifically stated in the proposal. This being so, what legal right has the plaintiff, upon his own construction of the contract, to recover for supposed profits on work which was not decided upon until after the contract was made, and the breach thereof occurred? When the defendant refused to permit the plaintiff to perform the contract, he thereby put an end to its execution. The breach was total. True, he had no legal right to do so, but he could and did do it, and the law could not compel him to permit the plaintiff to do the work. But the law compensates him for the loss of his contract by way of damages, and his right to them became fixed immediately upon the repudiation of the contract by the defendant. No subsequent act of the defendant could increase or diminish them. If thereafter he concluded not to build at all, or to omit the fireproofing, or to construct the building strictly in accordance with the original plans, it could not affect the plaintiff's claim for damages, for he had the right to recover for the loss of profits on the work he had a legal right to do at the time of the breach of the contract, and for none other. If this action had been tried before the defendant had decided to enlarge the building and fireproof the whole of it and let the contract therefor, it could not, in reason, have been claimed that the plaintiff could recover profits on any work except that specifically designated in the contract, for, as suggested, his

rights were fixed at the time of its breach, and the defendant was then under no legal obligations to have any additional work done.

When the plaintiff's offer and the defendant's acceptance thereof are construed as a whole with reference to the then plans of the building, the intention of the parties is reasonably clear. The plaintiff offers to furnish the materials and to construct a certain definite part of the defendant's proposed building as per plans for a stated price. He then adds the clause,

"Will build any additional partitions for ten cts. per sq. ft., and any additional floors for eighteen cts. per sq. ft."

Manifestly, this clause refers to the proposed building of eight stories only. If the defendant changed his plans so as to call for a building of twice as many stories, whereby the cost of constructing the floors and partitions in the additional stories would be materially increased, could he require the plaintiff to build them, and also bear the burden of placing extra beams throughout the eight additional stories? Clearly not. But the plaintiff's construction of his proposal logically leads to just this result. Our construction of the clause in question is that, at most, it is no more than an option giving the defendant the right, if he so elects, to require the plaintiff to construct at the prices named additional floors and partitions in the eight stories of the building referred to in the proposal (see Staples v. O'Neal, 64 Minn. 27, 65 N. W. 1083), but that it imposes no obligation upon the defendant to have such work done, or to permit the plaintiff to do the work included in the option, in the event of any change in the plans making it necessary. Whether there was any consideration for the option we need not decide, for, if there was, the defendant was not bound to avail himself of the option. See Bailey v. Austrian, 19 Minn. 465 (535); Tarbox v. Gotzian, 20 Minn. 122 (139); Chicago v. Dane, 43 N. Y. 240; Wells v. Milwaukee, 30 Wis. 605; Campbell v. Lambert, 36 La. An. 35. It follows that the action of the trial court in disallowing the amount of the fifth special finding was right.

2. Did the trial court err in disallowing all interest on the profits prior to the verdict? We also answer this question in the

negative. Whatever is, or may have been, the rule in other jurisdictions as to allowing interest by way of damages, this court has so allowed it as a matter of law, even in cases where the demand was unliquidated, provided its pecuniary amount did not depend upon any contingencies, and was ascertainable by computation, or by reference to generally recognized standards, such as market value. Derby v. Gallup, 5 Minn. 85 (119); Cowley v. Davidson, 13 Minn. 86 (92); Nesbitt v. St. Paul Lumber Co., 21 Minn. 491; Minneapolis Harvester Works v. Bonnallie, 29 Minn. 373, 13 N. W. 149; Varco v. Chicago, M. & St. P. Ry. Co., 30 Minn. 18, 13 N. W. 921. In each of those cases the action was to recover for personal property having a market value, which was converted, destroyed, or lost by the act or negligence of the defendant, or for a breach of a contract to transport such property, or for a breach of a warranty on a sale thereof. On the other hand, interest has not been allowed where the damages claimed were not only unliquidated, but could not be ascertained by reference to any generally recognized standard, or were, or any part of them, prospective or contingent, or the amount thereof depended in whole or in part upon the discretion of the jury. Actions for personal injuries, seduction, libel, slander, and false imprisonment fall within this classification. Now, it is clear that the case at bar, except as to the money expended by the plaintiff in preparation to execute his contract, and upon which interest was allowed, does not fall within the first classification stated.

We are not prepared to hold that actions for loss of profits arising from a breach of a contract may not arise where it would be just to allow interest from the date of the breach; but this is not such a case. The plaintiff's profits were prospective, and in no event could he have realized them until he had performed his contract; but the contract does not disclose when the work was to be completed. To allow him interest on the amount of his prospective profits from the date prior to the time that he could have possibly realized them would be unjust. Again, the amount of his damages was not definitely ascertainable by reference to any gen-

erally recognized standard, but the amount thereof to some extent depended on the discretion of the jury. It is true that comparison could be made between the market value of the labor and material necessary to execute the work and the contract price thereof. But the question of profits involved other considerations,—such as the hazard of accidents to the work or the workmen, and other risks and contingencies. We therefore hold that the plaintiff was entitled to the amount of the profits he might have made if he had been permitted to perform his contract, to be established by showing how much less than the contract price it would have cost him to have executed the work, but that he was not entitled to interest on the amount of such profits before they were ascertained by the verdict. Glaspie v. Glassow, 28 Minn. 158, 9 N. W. 669; Ennis v. Buckeye Pub. Co., 44 Minn. 105, 46 N. W. 314; Silberstein v. Duluth News-Tribune Co., 68 Minn. 430, 71 N. W. 622.

3. The plaintiff urges that it was, in any view of the case, error for the trial court to grant a new trial of any of the issues except those embraced in the fifth special finding, relating to profits on the optional work. The action of the court in this respect was correct, for interest was included in the general verdict, as well as the amount of the profits determined by the fifth finding. There was no practical way to correct the error except to order a new trial conditionally of all of the issues.

Order affirmed.