CHARLES J. SWANSON v. JOHN E. ANDRUS.[1]

On Motion to Dismiss, October 11, 1901.

Nos. 12,697—(112).[2]

**Reduction of Verdict or New Trial—Appeal.**

An order granting the defendant's motion for a new trial unless the plaintiff, within a limited time, files an agreement remitting a part of his verdict, but denying the motion if such condition is complied with, does not, as to the defendant, become final, and therefore an appealable order, unless and until the plaintiff complies with the condition within the time limited.

**Same—Notice of Order.**

Written notice of the making of such order cannot be served on the defendant, so as to limit his right of appeal, until the order becomes one denying his motion for a new trial by reason of the performance of the condition by the plaintiff.

On Appeal, December 13, 1901.

**Credibility of Witness—Evidence.**

Evidence offered for the purpose of affecting the credibility of a witness must, except when coming from the witness himself on cross-examination, be confined to proof of his general reputation for truth and veracity in the place of his present or recent residence.

**Ruling of Court—Instruction to Jury.**

A ruling of the trial court striking out the statement of a witness be-

[1] Reported in 87 N. W. 363, 88 N. W. 252.        [2] October term, 1901.

cause a conclusion, and not the statement of an evidentiary fact, and an instruction to the jury that certain agents of defendant had authority from him to enter into the contract involved in the action, considered, and *held* not erroneous.

Appeal by defendant from an order of the district court for Hennepin county, McGee, J., denying a motion for a new trial. Respondent's motion to dismiss the appeal denied. Order affirmed.

*Hahn, Belden & Hawley* and *W. E. Hale,* for appellant.

*John Lind* and *A. Ueland,* for respondent.

On motion to dismiss the following opinion was filed, October 11, 1901:

START, C. J.

Motion by respondent to dismiss the appeal herein.

A sufficiently accurate statement of the facts for the purposes of the motion is this: The plaintiff had a verdict for $15,982.79. Thereafter, and on December 14, 1900, the parties, with reference to a motion for a new trial by the defendant, entered into a stipulation, which, so far as here material, was to the effect that, in case the defendant desired to make a motion for a new trial, notice of such motion should be given prior to February 1, 1901; and, if he desired to appeal from the order which the court might make on the hearing of the motion, such appeal should be perfected, and the return to this court made, within five days after notice of the making of such order, and that such appeal should be heard at the then next April term of this court.

The motion for a new trial was made by the defendant on the ground that the verdict was not justified by the evidence and for errors of law, and on February 20, 1901, the court entered its order thereon, the essential part of which was in these words:

It is hereby ordered that a new trial in this action be, and the same is hereby, granted, unless the plaintiff, within three days from notice of the making of this order, file with the clerk of said court a stipulation and agreement in writing consenting  *  *  * that the verdict  *  *  * may be and shall be reduced to the sum of $8,030.68.  *  *  * It is further ordered that in case said plaintiff shall, within the time aforesaid, file his said written consent and agreement with the clerk of this court, then and

thereupon the said motion for a new trial shall be and is hereby in all things denied.

Notice of the making of this order was served by the plaintiff upon the defendant the day it was entered.

The plaintiff appealed to this court, giving a supersedeas bond, from the order granting conditionally the defendant's motion for a new trial, and the order on the hearing of his appeal was affirmed in this court (83 Minn. 505, 86 N. W. 465), and the remittitur filed in the district court on July 2, 1901, and on the same day, and not before, he filed with the clerk a written agreement consenting that the verdict might be reduced as required by the order.

The defendant on the next day, and not before, gave notice of appeal to this court from the order. Thereupon the plaintiff moved to dismiss the appeal on the grounds:

1. It was not taken within thirty days after written notice of the making of the order was served on the defendant.

2. It was not taken within five days after notice of the making of the order, as required by the stipulation.

3. The questions attempted to be raised by this appeal are res adjudicata by the judgment of this court on the former appeal.

It is only necessary to discuss the first ground urged. It is true that an appeal from an order can only be taken within thirty days after written notice of the same. G. S. 1894, § 6138; Levine v. Barrett & Barrett, 83 Minn. 145, 85 N. W. 942. But such notice cannot be given to a party for the purpose of limiting the time for appealing from a conditional order until the order becomes as to him a final order, and therefore appealable. Any other rule, the absurdity of an attempt to limit the time for appealing from a nonappealable order aside, would enable a party to give written notice of the making of a conditional and nonappealable order before the expiration of the time for the performance of the condition, thus setting the statute of limitations as to appeals running, and, after the thirty days in which to appeal had expired, perform the condition, and thereby defeat his adversary's right of appeal. The correct practice in cases like the one at bar requires

the party upon whom the condition is imposed to perform it, and then given written notice of the making of the order and of his compliance with its terms. The opposite party must then, if he desires to appeal from the order, do so within thirty days after receiving such notice of the making of the order. See the record in the cases of Hall v. Chicago, B. & N. R. Co., 46 Minn. 439, 49 N. W. 239, and Thompson v. Chicago, St. P. & K. C. Ry. Co., 71 Minn. 89, 73 N. W. 707.

The pivotal question, then, on this motion is whether the order in question was a final, and therefore an appealable, order, denying the defendant's motion for a new trial at any time before the plaintiff complied with its conditions. It is too obvious to justify any discussion that the question must be answered in the affirmative, for it was not until the plaintiff complied with its conditions, the time for such compliance not having expired by reason of his own appeal, that the order became one denying the motion for a new trial. If he had refused or neglected to have so complied within the time limited, the order would have become one granting a new trial,—the full relief the defendant asked for. If the latter had appealed before the expiration of such time, and the plaintiff had thereafter refused or neglected to comply with the conditions of the order, the appeal would have necessarily been dismissed, for there would then have been no order denying the defendant's motion, but one granting it. The stipulation of the parties necessarily contemplated the making of an order by the trial court which was at once appealable, hence it has no application to a conditional and nonappealable order. The question of res adjudicata does not arise on this motion to dismiss the appeal. It is a question to be considered upon the hearing of the appeal on its merits, and, if resolved in favor of the plaintiff, it will be a reason for affirming the order appealed from. Motion denied.

On appeal the following opinion was filed December 13, 1901:

BROWN, J.

This action was brought to recover money expended in preparing to perform a contract to do the fireproofing work on defendant's building; also the profits plaintiff might have made had he

been permitted to perform the contract. A former appeal is reported in 83 Minn. 505, 86 N. W. 465. The facts are there very clearly outlined and stated, but for a clear understanding of the questions presented for consideration at this time a brief statement thereof is deemed necessary.

Defendant was the owner of a building situated in the city of Minneapolis, known as the "Andrus Building." In October, 1898, he decided to remodel and rebuild the same, making it eight stories high. His plans called for six floors above the second, and partitions in five of the stories above the second were to be fireproof. Proposals for doing the fireproofing work were invited, and one from plaintiff was the only one considered. Negotiations were had between Thorpe Bros., representing defendant, and his architect, Long, which resulted in a contract by which plaintiff was to do such work for the sum of $19,500. The contract was made and entered into on the part of defendant by Thorpe Bros., acting as his agents. Subsequently, acting under the said contract, plaintiff made preparations, including the manufacture of tiles, to fulfil the contract; but on May 18, 1899, he was ordered out of the building by Thorpe Bros., acting as agents for defendant, and they repudiated the contract, and refused to permit him to perform it.

This action was brought to recover the money expended in preparation for the performance of the contract, and for the profits which plaintiff might have made if he had been permitted to fulfil the same. After making the contract with plaintiff, defendant changed his plans by adding two more stories to the building, making it ten, instead of eight, stories high. Plaintiff claimed on the trial of the action to be entitled to recover the profits he might have made, not only from a performance of the contract as to the six stories, but as to the additional stories added by defendant after plaintiff had been prevented from performing the same as well.

When the case was here before it came up on plaintiff's appeal, the trial court having held that the plaintiff was not entitled to profits as to the two additional stories. We sustained the contention of defendant in this respect, holding that plaintiff was

entitled to recover the money expended by him in preparing to perform the contract, and also the profits he might have made had he completed his contract as to the six stories, but that he was entitled to nothing as to the two stories added after his contract was repudiated by defendant.

The cause was remanded, and is now before us on defendant's appeal. Three questions are presented for decision and determination:

1. Whether the trial court erred in striking out certain evidence offered by the defendant.

2. Whether the court erred in refusing to permit a witness on behalf of defendant to testify that plaintiff had offered to pay the architect one thousand dollars if he would aid him in securing the contract from defendant.

3. Whether the court erred in instructing the jury that the agents, Thorpe Bros., had authority from defendant to enter into the contract in his behalf.

1. Witness Long, in the course of his testimony concerning the negotiations between himself and plaintiff relative to the contract, made the statement:

"We never reached an agreement, as I understood it. I say at that time we hadn't definitely settled as to the additions, or deductions as to the price part of it."

A motion was made to strike out the words "we hadn't definitely settled" as not responsive to any question, and as a conclusion on the part of the witness. The court granted the motion, and the ruling is assigned as error. The court was clearly right in striking out the statement of the witness referred· to. It was a mere conclusion of the witness, and not the statement of an evidentiary fact. The question whether the parties had definitely settled upon the terms and conditions of the contract was for the jury to determine, and not for the witness.

2. It is also contended by appellant that the court erred in excluding his offer to show by witness Long, the architect, that during the negotiations between the parties, and while plaintiff was endeavoring to secure the contract, he offered Long one thousand

dollars if he would assist him in getting the contract. This evidence was offered by defendant as a part of his case in chief, not as impeaching testimony, but as affirmative proof, and for the purpose of affecting plaintiff's credibility as a witness. When plaintiff was on the stand in his own behalf, a question was put to him by defendant's counsel on cross-examination embodying this identical matter. It was objected to by plaintiff, but the court overruled the objection, and held that -the question was proper, as tending to affect the credibility and truthfulness of plaintiff as a witness. Upon the ruling being made, defendant withdrew the question, and nothing further seems to have been said about it until the question was asked of the witness Long when called as a witness by defendant.

The court below was right. It may be conceded that the question to plaintiff on cross-examination was proper, but it was not proper to offer such evidence as a part of defendant's case in chief. Had defendant not withdrawn the question to plaintiff after the ruling of the court permitting it, and had plaintiff denied having made the offer to Long, it would then have been competent by way of impeachment, conceding the matter to be within the rule as to impeaching evidence, to have proved the fact that he did. It may be stated as a general rule that where a witness is called to impeach the character of another witness, inquiry cannot be made as to particular facts which tend to discredit his reputation, and that testimony offered for that purpose must be confined to his general reputation for truth and veracity. Rudsdill v. Slingerland, 18 Minn. 342 (380); Moreland v. Lawrence, 23 Minn. 84. Impeaching evidence of this sort, except when coming from the witness himself on cross-examination, must be confined to proof of his general reputation for truth and veracity in the community of his present or recent residence. An adherence to this rule will answer every purpose, and prevent confusion that would naturally arise from a multiplicity of collateral issues. 10 Enc. Pl. & Pr. 300, and cases cited. The ruling of the court was in line with this rule, and was not erroneous.

3. The court charged the jury, among other things, that Thorpe Bros. had authority from defendant to enter into a contract with

plaintiff for fireproofing the building. This instruction was excepted to, and is assigned as error. This presents the only serious question in the case. Defendant denies that Thorpe Bros. had any authority from him to enter into the contract with plaintiff, and it is contended that the question whether they had such authority in fact was, under the evidence in the case, a question of mixed law and fact, and for the jury to determine. We have examined the evidence with considerable care, owing to the earnestness and candor with which counsel for defendant presented their case on the argument, and reach the conclusion that the instructions of the court were in accordance with the undisputed evidence, and not erroneous.

It is not questioned but that Thorpe Bros. were the agents of defendant in the matter of the construction and management of the building in question. Defendant resided in New York City; Thorpe Bros. in Minneapolis, in which city the building was located. He did not undertake the personal supervision and management of his building operations. He paid but periodical visits to Minneapolis, and Thorpe Bros. were given full charge and supervision of the same. A written contract had been made and entered into between defendant and Thorpe Bros., in which appears the following, after reciting certain facts relating to transactions between those parties, and conferring upon Thorpe Bros. certain authority as defendant's representatives, namely:

"And which services on the part of Thorpe Bros. are also to include the entire management of this property, with the advice and under the direction of the said party of the first part [defendant], including the rebuilding of the building, the securing of tenants, purchasing of supplies, employing of help, etc."

Plaintiff construes this provision of the contract as conferring upon Thorpe Bros. the general agency, with general powers with respect to the construction of the building, and that all their acts in that connection were binding upon defendant, unless shown to have been contrary to his advice and direction. Defendant construes the contract to mean that Thorpe Bros. had no authority to make or enter into any contract or agreement with respect to

the construction of the building except the same was first affirmatively authorized and approved by him.

We need not determine the true meaning or proper interpretation of the contract. It is not decisive of the question at issue. As stated, there is no controversy but that Thorpe Bros. were the agents of defendant in charge of the construction of this building. It may be that their authority, by a proper interpretation of the contract, was limited and restricted, as contended by defendant; but, acting as his agents, they in fact made and entered into the contract with plaintiff, and the jury so found. That question was properly submitted to the jury, and they so found as a fact. Prior thereto, however, they expressly informed defendant by telegram that the building could be fireproofed for $24,000 and requested of him instructions whether or not to enter into a contract to that end. The telegram sent to defendant was in the following words:

"Seven floors Sidle Block can be fireproofed for $24,000. Do you recommend?"

On the same day they wrote defendant to the same effect, but at greater length, and inquired of him again whether he recommended fireproofing the building. Defendant answered the telegram by wire, as follows, "I approve fireproofing;" and subsequently answered the letter relating to the same subject as follows:

"I have read yours about fireproofing. Telegraphed you to fireproof. *   *   *"

Upon the receipt of this telegram and letter by Thorpe Bros., they entered into the contract in question with plaintiff.

The evidence on this subject is undisputed, and seems to us, irrespective of the terms of the written contract between Thorpe Bros. and defendant, to confer upon the agents express authority to make and enter into the contract they did make with plaintiff. And, moreover, if the construction of the contract between defendant and Thorpe Bros. contended for by defendant, and to the effect that the agents were to be governed and controlled in the

matter of entering into contracts by the orders and directions of defendant, be adopted as the proper one, the conclusion is unavoidable, from the telegrams and letters referred to, that the necessary orders and directions were given. The court below was therefore right in instructing the jury that the agents had authority to enter into the contract.

It is further urged by defendant that, conceding the authority of Thorpe Bros. to be established by the letters and telegrams referred to, there were certain restrictions imposed upon the agents by defendant with respect to the terms of the contract to be made, namely, that Thorpe Bros. should not make a contract. for fireproofing the building unless the person contracted with would agree to take in part payment of the contract price certain real-estate mortgages owned and held by defendant upon property in the city of Minneapolis. Whatever was said between the agents and defendant on this subject had reference, not to the authority of the agents to make the contract, but solely to the manner of payment for the contract price of the work. Besides this, it is quite clear from the evidence that the contract was made and entered into and accepted by plaintiff before anything was said by defendant to his agents with reference to paying for the work with real-estate mortgages. We think the evidence on this, as upon the question as to the authority of Thorpe Bros., so clear and conclusive as to make the question one of law, and not, as strenuously urged by counsel for defendant, a question of fact to be submitted to the jury.

This disposes of all the assignments of error, and the order appealed from is affirmed.