**STATE of Minnesota, Respondent,**

v.

**Kevin Scott LARSON, Appellant.**

No. C3–84–1782.

Court of Appeals of Minnesota.

June 18, 1985.

Review Granted Aug. 29, 1985.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, John W. Riches, II, Swift Co. Atty., Benson, for respondent.

John E. Mack, New London, for appellant.

Considered and decided by FOLEY, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Kevin Scott Larson was tried before a jury on charges of first and third degree criminal sexual conduct. Larson appeals from the jury's verdict finding him guilty of criminal sexual conduct in the third degree, claiming that the trial court improperly excluded evidence. We reverse.

## FACTS

At approximately 11:30 p.m. on March 26, 1984, appellant knocked on the door of a one room apartment occupied by the vic-

tim and her three children. The victim and appellant had lived together for about one year several years before. Appellant had fathered two of the victim's children but they had not contacted each other for about two years, except for chance encounters on the street.

When the victim answered appellant's knock, she asked him to leave because she was very tired. She testified that he appeared intoxicated and had difficulty speaking. Appellant insisted that she let him in because he wanted care for his right hand which he had broken earlier that evening. The victim obliged and allowed appellant to enter her apartment, where she examined his hand. When the victim told him to go to the hospital for medical attention, appellant refused to leave. He asked the victim to go to bed with him but she refused, telling him to leave her apartment. When appellant did not leave, the victim went into her bedroom which she shared with her three children, and covered herself with a blanket.

A few minutes later appellant followed her into the bedroom, pulled off her blanket and got on top of her. The victim testified that appellant said "if you don't do what I say, then I'm going to rape you and then I'm going to hurt my kids. You know, 'my kids.'" Appellant ordered the victim to take off her pajamas and her underpants. When the victim refused, he threatened her again and she complied. With the victim lying on her back appellant fondled her breasts and put his finger in her vagina. The victim attempted to get up but appellant pushed her back on to the bed and held his hand firmly upon her throat.

Appellant then told the victim to give him a back rub. During the back rub the victim's three year old daughter woke up and asked her what was wrong. The victim told her to lay down and go back to sleep. Shortly afterwards, the victim fled the apartment under the ruse of getting a drink of water and ran to a neighbor's apartment. The neighbor accompanied the victim back to her apartment and ordered appellant to leave. The victim and the neighbor then went outside and flagged down a police officer.

An investigator for appellant's attorney contacted the victim sometime before the trial. Following that contact appellant's attorney prepared a letter which the victim signed. That letter, addressed to the county attorney, provided as follows:

I would like to drop the charges against Kevin Scott Larson for alleged sexual misconduct. The reasons for this request are as follows:

1. I was not hurt physically or psychologically in this episode.

2. Kevin is the father of my children, and no purpose is going to be served by sending him to prison and causing a rift between the children and their father for life.

3. The statutes involved in 1st and 3rd degree sexual misconduct indicate serious misconduct using coercion, threats and the like. I do not believe his conduct was so serious as to fall within these charges.

4. I believe a trial is likely to be costly and is going to interfere with both of our lives, which we are attempting to get straight.

5. Mr. Larson's relations with me was close enough so that this had elements of a family dispute.

I hope you will seriously consider this in dropping or otherwise disposing of these charges.

## ISSUES

1. Did the trial court improperly exclude testimony concerning the past relationship between the victim and appellant?

2. Did the trial court improperly prohibit cross-examination of the victim using her letter to the county attorney in which she states her opinion that appellant's conduct is not serious enough to constitute criminal sexual conduct in the third degree?

3. Did the trial court prejudicially prohibit appellant from asking the victim whether the prosecution had threatened to

take her children from her unless she testified against appellant?

## ANALYSIS

### 1. Evidence of appellant's past relationship with the victim

It is difficult for this court to determine precisely what evidence concerning appellant's past relationship with the victim that the appellant claims the trial court should have admitted. At trial the court allowed appellant's attorney to cross-examine the victim on the period of time she had lived with appellant, on their conception of two children, and on their frequent arguments. The court did not allow any questions concerning their past sexual relations, but appellant claims he was not trying to explore that area. Nonetheless appellant contends on appeal that his cross-examination was improperly limited on the issue of "access," or appellant's "right to assume consent on the part of [the victim]." Appellant, however, offers no explanation of how that interrogation would differ from an interrogation on their past sexual relations. If appellant sought to question the victim about their past sexual relations, he lost that opportunity when he failed to make a motion and an offer of proof before trial as required by Minn.Stat. § 609.347, subd. 4(a) (1984).

### 2. The victim's letter to the county attorney

The victim's letter to the county attorney has six parts. Those parts characterizing the incident as a family dispute, addressing the expense of trial, and speaking of a "rift" in the family have no relevance on the issue of appellant's guilt. That part requesting that the charges be dropped is also irrelevant. As the State points out, the decision to bring criminal charges lies exclusively within the prosecutor's discretion. *See State ex rel. Wild v. Otis,* 257 N.W.2d 361 (Minn.1977), *cert. denied* 434 U.S. 1003, 98 S.Ct. 707, 54 L.Ed.2d 746 (1978). A fifth part of the letter states that the victim was not harmed in the incident. During cross-examination the victim testified that she was not hurt by the appellant. Thus the fifth part of the letter has little impeachment value on that point.

The final part of the victim's letter states the victim's opinion that appellant's conduct did not constitute criminal sexual conduct in the first or third degree. Under Rule 701 of the Minnesota Rules of Evidence lay witnesses may testify on their opinions if the opinions are rationally based upon the witness' perception and are helpful to the trier of fact in deciding the issue. However, the victim's opinion does not concern the factual issue of whether the defendant committed the acts charged by the State. Instead, this opinion is merely a legal conclusion that the appellant's actions were not criminal. Minnesota courts have long held that this type of evidence is inadmissible. *See, Swanson v. Andrus,* 84 Minn. 168, 88 N.W. 252 (1901). Accordingly, the trial court properly sustained the State's objection to introduction of the victim's letter.

### 3. Coercion of the victim to testify

Appellant also asserts that the court improperly excluded evidence that the prosecution coerced the victim into testifying by threatening to take her children away from her. While the appellant asserted that this evidence was proper for impeachment purposes, the respondent objected that it was "absolutely false" and that its prejudicial effect would outweigh its probative value. Our review of the following portion of the transcript causes us concern:

Q. Now, has the prosecution pressured you in any way to cause you to give the testimony that you are giving?

MR. RICHES: I'll object. That's irrelevant.

THE COURT: Sustained.

MR. MACK: Offer of proof.

(the following conference was held at the bench, out of the hearing of the jury:)

MR. MACK: First of all, pressure to give testimony by either threats, bribes or anything like that, this is always admissible in impeachment. Secondly, we

would prove through this witness that the prosecution threatened to take her children away from her unless she would testify here today and—

MR. RICHES: That's absolutely false, number one, and secondly, even if it were true, its prejudicial effect would outweigh any probative value.

THE COURT: The objection is sustained at this time.

(end of bench conference)

 The law generally allows exploration of a witness' partiality or any motive a witness may have in her testimony. *See, Esser v. Brophey,* 212 Minn. 194, 3 N.W.2d 3 (1942). Bias is always relevant because it affects the weight the trier of fact may place on a witness' testimony. 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). Indeed, the United States Supreme Court has held that the right to cross-examine concerning a witness' biases is constitutionally guaranteed by the confrontation clause of the 6th amendment. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Since the appellant's proposed evidence clearly tended to show bias, the appellant had a right to inquire into this relevant information. While the trial court may have discretion to limit the scope of this inquiry, it is clear that neither of the grounds presented by the respondent were sufficient to overcome the appellant's right to confront his accusor.

The trial court may have prohibited this evidence because it believed the respondent's claim that the allegation was false. A prosecutor's belief that a statement is false is not a basis for excluding testimony, for that determination is one which only the trier of fact can make. *See, Young v. Wlazik,* 262 N.W.2d 300, 310 (Minn.1977). Where an officer of the court makes a presumably good faith offer to prove that he can show bias, the trial court should accept the offer and allow the inquiry. If the victim in this case had answered affirmatively, her testimony would have been impeached by her bias to testify against the defendant. Prohibiting the defendant from inquiring into this subject merely because the prosecutor believed it to be untrue, denies the criminal defendant the right to effectively confront his accusor.

The trial court may also have prohibited the evidence because the prejudicial effect of the evidence outweighed its probative value. Since the purpose of the proposed evidence was to show a major witness' biases, its probative value was clearly very high. As the Supreme Court said in *Davis v. Alaska,* "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination." 415 U.S. at 316–17, 94 S.Ct. at 1110–11. Whatever prejudicial effect this evidence may have had is dwarfed by the probative value of showing this witness' biases. Therefore, this second ground also does not justify prohibiting the appellant from asking the cross-examination questions which he attempted to ask.

**DECISION**

Because we hold that the trial court erred when it refused to allow appellant to cross-examine the victim on alleged coercion, we reverse and remand for a new trial.